May it please the Court, John Romano for the United States. I'd like to reserve four minutes for rebuttal. This Court should reverse the order of the District Court which granted Dobson's motion for judgment of acquittal following a jury trial. In granting that motion, the District Court did not do the proper review for sufficiency of the evidence, including viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict. When viewed in that light, the evidence was sufficient for a rational jury to find that Dobson, a Deputy United States Marshal, provided knowingly false and material testimony to a federal grand jury. This Court exercises plenary review over that order and views the jury's verdict with a highly deferential standard of review. And a judgment of acquittal should not be granted unless there is no evidence, regardless of how it is weighted, from which the jury could find the defendant guilty. Here, if you look at the order of the District Court or the analysis of the District Court, the Court didn't consider the evidence at all in granting this motion and instead relied on a wholly irrelevant typographical error in the superseding indictment. A typographical error which was never raised by Dobson and which, as the government explained in its brief, can provide no basis for a judgment of acquittal. When you actually look at the evidence, the jury could find that Dobson knew that Langford Davis had a gun, remembered seeing Langford Davis at the hospital, and that those statements had the ability to influence, impair, or hamper. Why don't you spend a moment on the superseding indictment and tell us why the District Court should not have relied on that? Well, first of all, the Court explained to the jury on several occasions that the superseding indictment was not evidence. And when we're looking at a motion for judgment of acquittal, we're looking at the evidence. The superseding indictment is not evidence. The evidence clearly showed that this was a statement. If you look at the transcript of the grand jury testimony, there's no question mark there. And if you were to listen to the tape, and the tape wasn't provided but it could be provided to the Court, it's very clear that the statement was a statement. Dobson himself, at the oral argument for the motion, said it's an assertive response. So by looking at that, the Court was looking at something that wasn't evidence. And there's quite clearly no reason to look at that to say that there should be a judgment of acquittal because the evidence was more than sufficient. The Court, the government pointed out a couple of possible other ways of looking at this question mark, but none of them would, again, be the basis for a judgment of acquittal. Perhaps the defendant could have moved for a new trial, but the defendant didn't do that. And again, there would be no basis for a new conviction as the government explained, the no answers. The Court didn't look at the no answers and explain why the evidence wasn't sufficient as to them. So there's multiple reasons why the Court's order was incorrect here. You've asked us to reverse. I mean, wouldn't we, if we agree with you, wouldn't we really just vacate and send back a remand to analyze the sufficiency of evidence using the correct standard here? Well, the Court, I mean, I suppose it's a possibility. The Court didn't look, I mean, the Court didn't look at the evidence, and the evidence is more than sufficient here. I don't see any reason why the Court should go back and, I mean, the evidence was clearly more than sufficient. The Court, I mean, the case would really just go back, reinstate the conviction, and allow the judge to sentence him on both counts. I don't know if the Court wants me to go through the evidence or if the Court wants me to. Well, you're asking us, you're asking us to do the job that, that you say the district court should have done in the first instance, so I think it would be, it would be a good thing for you to go through the evidence to support your position that we should simply reinstate the verdict. Sure, Your Honor. The evidence was, I mean, it was, there was much evidence that Mr. Dobson knew that Langford Davis had the gun. The best evidence being that he was at the hospital. He saw Langford Davis show off the gun a matter of feet from his face. He said, I'm a corrections officer, he showed the gun. The testimony of the officers was that he was lucid, he was coherent, he was sitting upright, he was answering questions. He was, he talked to someone he hadn't seen in two years. So I think the evidence was fairly corroborated that he, he knew what was going on in front of him. What happened after that I think corroborates that further. When Langford Davis became a suspect of some sort, he immediately flees. He drives off on a flat tire. He leaves a good spare tire behind. Dobson all of a sudden doesn't know his best friend, doesn't know anything about him, can't answer any questions. If you look ahead, Mr. Langford Davis is found with the same gun on the same ankle, you know, in the same holster two weeks later. So I think that corroborates it further. If you go back in time, you have Dobson telling the bouncers at the club that Langford Davis is a corrections officer. He doesn't get patted down. After the incident that night, Langford Davis says, you know, I sprayed the vehicle, I got them. And Dobson responds, I don't care, I want my gun. So there's a lot of evidence here from which the jury could, I mean, more than sufficient. How much increase in the sentencing range would there be if we, if we went your way and this were reinstated? There would be certainly the two-level increase for obstruction of justice, which I think increases the range somewhat like six months. The real reason the government's bringing the appeal is that, you know, this is a very serious offense. It's a deputy United States marshal. He lied before a grand jury. So he should be punished for that. And the government is concerned about courts granting Rule 29 motions without really considering the evidence, sitting down and looking at the evidence, instead of relying on things that have nothing to do with the correct standard. And the government doesn't want to see that eroded or, you know, in a case like this. And if the court had granted this motion before the jury verdict, the government would have no recourse. So the government's concerned that this doesn't, the government doesn't want this to become the standard to rely on other things and to not really consider the evidence before the grand jury. You may be arguing against your own interests, though. The district court could then go ahead and do it before he sends it to the jury, and there's nothing you can do about it. Well, we think district courts wouldn't do that. If the court doesn't have any questions, I'll come back on rebuttal. Anything else? Good. Mr. Romano, thank you very much. Thank you. Mr. Keller. Good morning, Your Honors. Good morning. Your Honors, my name is Chester Keller, and I represent Antoine Dobson in this matter. I would start off with the basic principle that the government has to meet its burden of proof beyond a reasonable doubt on each and every essential element of a crime. And they have not done that in this case, particularly in this perjury count of conviction. Fortunately, under the Federal Rules of Criminal Excedure 29, there is a mechanism, and an important vital mechanism, that can avoid people being convicted of a crime when, in fact, the government has not proven that crime beyond a reasonable doubt. And I believe that it's pretty clear from the evidence that was offered at this trial, and even based on the entire jury verdict in this case, that the government has failed in its efforts. The two essential elements on a perjury conviction that are lacking in this case is, one, that they prove that Antoine Dobson knowingly gave a false statement to the Federal Grand Jury. You're not relying so much. Are you really relying on the typo, or what? Well, Your Honor, admittedly, as you can tell from my brief, I did not speak much about that typographical mistake. I'm not the one who types those indictments. I guess the government types them. But that is the charge, and for some reason, the grand jury returned an indictment that actually has a question mark at the end of my client's statement. If the judge was focusing on the typo, and I think I agree with you in your analysis, as to it may not be as important as one might think, isn't what you're really arguing sufficiency of the evidence? Absolutely, Your Honor. And that's a toughie. Respectfully, Your Honor, I don't think it is that tough in this case. I really do not. The government is the one who's making the conjecture here. What happens, what is clear, and this is from the government's case, is that this man, my client, Mr. Dobson, gets assaulted, robbed at a nightclub in Elizabeth, New Jersey, and government witnesses now explain how he looked and behaved immediately after that robbery. There was some suggestion that he might even have been shot in the head area, though that was never conclusively shown. What we do know is that the manager of the club that night on January 4th, then ultimately January 5th of 2008, said that he was bleeding profusely from the head and that he seemed disoriented, to use the word that he seemed a little bit in shock. He wasn't very responsive and really wasn't totally balanced out. That's the manager of the nightclub that the government called my client. So it's somewhat unclear as to how the government can say it's clear that my client knew that this man, Larry Langford Davis, had a gun at the hospital. My client was being treated for these head wounds. Blood was apparently gushing from his head at the nightclub. Another balance, Jose Morales, also said he was full of blood. These are government witnesses. One of the problems you have is that a few weeks later, after this January 5th incident, Dobson told a police investigator that Langford Davis was at the hospital that night. That's correct, Your Honor. That's without dispute. My client gave a statement three weeks after the incident at the hospital that Larry Langford Davis was at the hospital. Your argument that he could not have seen the gun and seen this person at the hospital, that was presented to the jury and the jury didn't buy it. Isn't that true? There's no doubt that the government got a conviction on that particular account. And the jury had to decide who's telling the truth. Was your client telling the truth when he said, I didn't see it because of my condition? Well, what he says in October now of 2008, rather than January 2008, when the incident took place and three weeks later when he spoke to a detective saying he saw Mr. Davis at the hospital, was that it's ten months later at the grand jury. And in an unresponsive way, he's asked, did you see Larry Langford Davis with a gun that night, January 4th, January 5th? He says, no. And he says, I don't even remember seeing him at the hospital. Ten months later now, after having gone through this traumatic incident of the robbery and his serious injuries, it's quite understandable that he would not remember that. But the jury didn't believe his testimony. The jury convicted him on that count, Your Honor. There's no doubt about it. The jury acquitted him on two other counts in which he specifically was asked, did you give him your gun that night on January 4th? And he says, no. Where was your gun that night on January 4th, January 5th? It was in my house. The jury found him not guilty on that. That was the essence of the government's case, and it's also the essence of the grand jury indictment, because the grand jury indictment on count one in paragraph six specifically says, when in fact this is on the count one of the knowing disposal of the gun, when in fact the firearm that Langford Davis had strapped to his left ankle was that which defendant Dobson had recently purchased supposedly for defendant Dobson's own official use. That was the essence. The government trying to say a gun, the bottom line is that the government's indictment and the government's proofs all were trying to suggest that this was the same gun. And the jury found beyond that they could not find a boundary reasonable doubt and acquitted him on that, on both those counts of perjury. In addition to another count. How long was the deliberation? I'm sorry, Your Honor? This was a lengthy deliberation. I know it well because my family was up at Notre Dame on vacation. I had to stay and wait for the deliberation. I think they started deliberating on late Thursday afternoon. No verdict then. I think all day Friday, no verdict. My wife saying, when are you coming? Monday, no verdict. And then late Tuesday afternoon they came back with a verdict. My wife was happy about that. I wasn't, given what the verdict was. So it was a long deliberation. And the government writes in their brief that, well, you know, inconsistent verdicts, you know, don't matter, isn't a cause for concern. And as a general rule of law, of course, that's true. But what we have here, Your Honors, is the jury, the trial jury specifically found that that was not Larry, that he, my client, did not lie when he said that it was not his gun on Larry Langford Davis on January 4th and January 5th. There's no doubt it was his gun on January 19th. And Larry and my client explained in the grand jury, which was the essence of the last count, count six, that how that happened, you know, that in fact, you know, he was the one going into a bar that night and he, my client, he had the gun. A bouncer stopped him, told him to get rid of the gun. He goes and puts it in Larry Langford Davis' car and then forgets it. He was drunk. He was drunk on the 19th. He was drunk on the 4th and the 5th, which is another factor as to what he did see and what he didn't see at the hospital. So when the jury found not guilty on the perjury count with respect to what happened on the 19th as to what Antoine said to the grand jury, that's significant, too. And there's no doubt that it's his gun on the 19th, but how it got there. And I think it's somewhat significant that he's found guilty of count one, which is the knowing disposal of the gun, which is consistent with even what the prosecutor said at the very outset of their summation when they said, you can convict, in words, please, when you get the chance, look at that, you can convict Mr. Dobson just on Mr. Dobson's own statement to the grand jury. In essence, you believe Dobson's story, then you can still convict him on count one, knowing disposal, because, in fact, he told Larry Langford Davis after he now realized that he had left the gun in the car to just take the gun, hold on to the gun. I'm too drunk to drive and come and get it because he's now at that Jersey Girls Club again, and I'll come and get it in the morning. And the prosecutor opens his summation with that. You can convict him on count one just on Dobson's words alone. They acquitted him on the last count, which was, in essence, Dobson's version of events about calling Langford Davis and saying, I'll come get it in the morning. You make the assertion at page 28 of your brief that the district court held that the materiality of the statements was not proven. What do you base that? Well, I think it's very easy with respect to I don't remember. I don't understand. If, in fact, the materiality is if it's helpful to the grand jury investigation, if it's true, then it's helpful. If it's not true, then it hinders. The fact that he did or did not remember 10 months later seeing Mr. Davis in that hospital is irrelevant and totally immaterial. It would not have fostered the grand jury investigation if he had said the other. Oh, I remember seeing Larry Langford Davis in the hospital. Why would that matter? I still don't understand how that is the least bit material to the grand jury investigation here. And with respect to whether or not he did receive Larry Langford Davis with a gun that night, a gun that night, no. Well, we know from, one, the jury's reasonable inferences as to the acquittals on counts three and four and even on count six that it wasn't any gun, that the whole premise of the indictment and the whole premise of the prosecutor's arguments is that was the same gun. So that is not material whatsoever. Obviously, there's two questions, in essence, and two answers on this one count. And the first part, I would suggest, cannot be the fact that it's Mr. Dobson's gun because, in fact, he was essentially acquitted as to those perjury counts with respect to that. So if it's I don't remember that he was at the hospital that night has no relevance whatsoever. And I don't think the government even made much of an effort in trying to explain to Your Honors in its brief that, in fact, that that was material to the grand jury investigation. At the very outset, they told him, my client in the grand jury, when he voluntarily gave up his rights, was willing to testify 10 months later that you are a target. We, you know, we believe that you may have violated the federal criminal laws with respect to the knowing possession of the gun on Mr. Larry Langford Davis. That was the essence of the grand jury investigation, not whether or not my client remembers seeing Larry Langford Davis at the hospital that night. I could go on. The big thing that the government. If we disagree with the district court. I'm sorry, Your Honor. If we disagree with the district court in his reliance on the indictment, then I gather you would like us to send it back and have him do an analysis, the normal rationality analysis. Well, if I get my first choice, my first choice is for Your Honors to do a plenary review, which is, of course, the standard here, and you could find that the government hasn't carried its burden. I understand. You and Mr. Romano want us to do that job and come out in different ways. Well, if it's coming out a different way, then obviously the second choice is, of course, it could be remanded back to the district court and the district court could do a fuller analysis. I would like to think that in my brief I have explained why the government has not carried its burden. The government witnesses here now all established clearly that my client was very, very intoxicated on the nights of January 4th and January 5th. It was his birthday on January 4th. He had, I think, just turned 24, I believe. I'm sorry, 28. In addition to that, the robbery and the government's witnesses' explanation of how he appeared, there was total chaos in that hospital that night. One police officer, Officer Pereira, explained there was approximately 50 people or more in the emergency room that night. It's about 3 a.m. in the morning, and many friends of my client had shown up, and doctors are treating him. There's no doubt that, and there's no witness. Not one government witness can say that, yes, we know that Mr. Dobson saw Mr. Langford Davis showing the gun that night. No one. No one can establish that from the government's case, and I think that's very significant. That's why the government cannot carry the burden of proof beyond a reasonable doubt here on each and every essential element. Mr. Coe, let me see if I understand where we are and what your position is with us. You seem to have argued, and correct me if I'm wrong, that you're not relying on the basis the district court used to grant the Rule 29 motion about the question mark. You are saying that the evidence was insufficient to convince a rational juror that your client was guilty. Is that your argument? That is my argument, yes, Your Honor. So if we disagree with you and we look at the record and believe that, in fact, there was sufficient evidence to convince a rational juror, what is it you're asking the court to do? Well, if you believe that there's sufficient evidence, obviously, you know, on a plenary review, you can rule on your own, of course, and reinstate the verdict. As an alternative, I would ask that at least the court consider remanding to the district court and let the district court, who actually presided over the trial, make its own findings and analysis. Thank you. Any other questions? Mr. Keller, thank you very much. Thank you, Your Honor. Mr. Romano. Thank you. I just want to make two quick points. Number one, as the government explained in its reply brief, it's just inappropriate to look at acquittals. I'm sorry, pull this up. Sorry. It's completely inappropriate to look at the acquittals and try to parlay that into judgment of acquittal on other counts. And the court said that in Powell, and this court has said that many times. Secondly, materiality. Both statements were material, and the government explained why. They corroborated the testimony of the law enforcement officers. His testimony undermined that eyewitness testimony, and it bolstered his own story, which he later told at Langford Davis' trial. So I think that is material. And finally, again, the defendant is trying to look at the evidence in the light most favorable to him. If you look at this evidence, it's more than sufficient for a jury to find that Dobson knew that he had a gun and remembered seeing him at the hospital. So we'd ask that you reinstate the conviction and remain for sentencing. Good. Thank you. Thank you. The case was very well argued, and we will take the case under advisement.